IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

JACKIE DEWAYNE OWENS,                    :
                                         :
          Plaintiff,                     :
                                         :
vs.                                      :          CASE NO. 5:13-CV-299-MTT-MSH
                                         :
BRUCE CHAPMAN, *et al.*,                 :          42 U.S.C. § 1983
                                         :
          Defendants.                    :
_____         :

## ORDER & RECOMMENDATION

Plaintiff Jackie Dewayne Owens, an inmate currently confined at the Coastal State

Prison in Garden City, Georgia, filed a *pro se* civil rights action under 42 U.S.C. § 1983

and Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12131, *et*

*seq.* The Court previously granted Plaintiff's motion to proceed *in forma pauperis* and

ordered Plaintiff to recast his Complaint. (ECF No. 36). Plaintiff filed his Recast

Complaint. Now, the undersigned must conduct a preliminary screening of the Recast

Complaint because Plaintiff is a prisoner who "seeks redress from a governmental entity

or [an] officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

## STANDARD OF REVIEW

When conducting preliminary screening under 28 U.S.C. § 1915A, the Court must

accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107,

1110 (11th Cir. 2006). *Pro se* pleadings, like the one in this case, are "held to a less

stringent standard than pleadings drafted by attorneys and will, therefore, be liberally

construed." *Id.* (internal quotation marks omitted).   Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008).  The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless."  *Id.* (internal quotation marks omitted).  A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original).  In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim.  *Id.* at 556.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

## FACTUAL ALLEGATIONS

Plaintiff's Recast Complaint supersedes his original Complaint and any supplements that Plaintiff filed prior to his Recast Complaint.  Order, May 29, 2014, ECF No. 36.  In his Recast Complaint, Plaintiff asserts claims against Georgia Diagnostic and Classification Prison employees Medical Health Administrator Mr. Butts, Chief

Counselor Gary Caldwell, Warden Bruce Chatman, Correctional Officer Russell Cochran, Captain John Doe #1, Correctional Officer John Doe #2, Medical Director Joseph Fowlkes, Unit Manager Ms. Jackson, and Correctional Officer Ms. Pitman.[1] Recast Compl. 2 ¶ 1 to 5 ¶ 10, ECF No. 39. Plaintiff brought his claims against all Defendants in their official and individual capacities. *Id.* at 5 ¶ 11.

Plaintiff alleges the following facts in support of his claims. The allegations must be construed as true for purposes of the preliminary screening. Plaintiff, who is wheelchair bound, was an inmate at the Georgia Diagnostic and Classification Prison. On July 14, 2013, Plaintiff saw prison gang members and their leader "Slim" attack a fellow inmate. Slim came to believe that Plaintiff "kited [Slim] out for his gang beating of the inmate." *Id.* at 6 ¶ 15. Slim told Plaintiff that if he found "out for sure" that Plaintiff had "kited him out" for the gang beating, Slim was going to "beat [Plaintiff's] ass out of his wheelchair, then sto[m]p him into the concrete floor." *Id.* Plaintiff informed Defendant Jackson, the unit manager, of the threats. Jackson moved Slim to another dorm, but Slim's new dorm was "right next door in F-house[,] leaving a way for Slim to access the [Plaintiff]." *Id.* at 7 ¶ 15.

On July 16, 2013, Defendant John Doe #2, a correctional officer, let Slim out of F-

---

[1] Plaintiff named Warden "Bruce Chapman" in his Recast. The warden's name is Bruce *Chatman*. The undersigned will use his correct name in this Order. Also, the undersigned notes that although Plaintiff previously asserted claims against Correctional Officer Morton and Medical College of Georgia, Plaintiff did not name them as Defendants in his Recast Complaint, and he did not allege any factual basis for holding them liable. The undersigned thus concludes that Plaintiff has abandoned his claims against Morton and Medical College of Georgia, and it is **RECOMMENDED** that Plaintiff's claims against these Defendants be **DISMISSED**.

house.  Then, Defendant Cochran, another correctional officer, let Slim into Plaintiff's dorm.  Cochran watched Slim knock Plaintiff from his wheelchair and attack him but did nothing to prevent or stop the assault.  Plaintiff was taken to the medical treatment room complaining of severe pain in his foot, ankle, back, neck, and head, but Defendant Carter, a nurse, refused to treat Plaintiff.  Instead, she told Plaintiff to "fill out a sick call" and sent him back to his cell untreated.  *Id.* at 9 ¶ 19.  Plaintiff wrote a statement about Slim's attack and told John Doe #1, the captain on duty, that he wanted to press charges.  Plaintiff also asked the officers to pass out incident reports in his dorm, but that request "was ignored."  *Id.* at 8 ¶ 18.  The next day, a correctional officer took Plaintiff back to the medical treatment room because he continued to complain of pain in his foot, ankle, and neck, but Carter again refused to treat him.  Plaintiff received medical treatment several days later.  Plaintiff asserts that Defendant Butts, the Prison's medical health administrator, failed to train the Prison's medical personnel on handling inmate injuries.

Several weeks after that attack, Plaintiff fell while attempting to urinate because his cell was not wheelchair accessible and had "no railing in [the] toilet area."  *Id.* at 10 ¶ 21.  Plaintiff was taken to an "outside emergency room," where an x-ray revealed damage to Plaintiff's ankle.  The doctor ordered an immediate orthopedic appointment and prescribed a "permanent boot."  *Id.*  Plaintiff appears to contend that he did not receive the prescribed treatment because Defendant Fowlkes, the medical director, "intentionally interfer[ed] with" the doctor's orders.  *Id.* at 11 ¶ 23.

A few weeks after his fall, Defendant Pitman, a correctional officer, closed the "A-corridor" gate on Plaintiff's wheelchair, cracking his wheels.  A few days later, Plaintiff

4

did not follow Pitman's order for him to go to the end of a line.  Pitman "waited on [Plaintiff] to get halfway through the gate and started to flip the switch back and forth causing the trap gate to start [to] open." *Id.* at 11 ¶ 22.  The gate bounced off Plaintiff's wheelchair until it caught Plaintiff in the gate.  Plaintiff alleges that he suffered "mental anguish and physical injury" as a result of the second gate incident, but he did not allege any specific facts on this point, such as a description of his injuries. *Id.*

Finally, Plaintiff summarily alleges that Defendant Caldwell, a grievance counselor, sought to retaliate against Plaintiff for using the Prison's grievance procedure. Plaintiff further alleges that Caldwell conspired with Fowlkes to retaliate against Plaintiff.  But Plaintiff did not allege any facts regarding his use of the grievance procedure, whether Fowlkes and Caldwell knew about Plaintiff's use of the grievance procedure, or how Fowlkes and Caldwell retaliated against him.

Plaintiff asserts claims under 42 U.S.C. § 1983 for violation of his rights under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiff also contends that the Prison violated Title II of the ADA.  Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and court costs.

## ANALYSIS

Plaintiff asserts most of his claims under 42 U.S.C. § 1983.  To state a § 1983 claim, Plaintiff must allege that a Defendant "acting under color of state law committed an act that deprived [Plaintiff] of some right, privilege, or immunity secured by the Constitution or laws of the United States." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1985); *accord* 42 U.S.C. § 1983.  As a preliminary matter, the undersigned

5

notes that Plaintiff seeks to assert § 1983 claims against Defendants in their official and individual capacities.  Official capacity claims are construed as claims against the Prison.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (internal quotation marks omitted).  The Court previously dismissed Plaintiff's § 1983 claims against the Prison because the Prison is an arm of the State and is entitled to Eleventh Amendment immunity.  Order at 1, Nov. 5, 2013, ECF No. 22; Order & Recommendation at 4, ECF No. 8.  For the same reason, it is **RECOMMENDED** that Plaintiff's § 1983 claims against Defendants in their official capacities be **DISMISSED**.[2]  The undersigned will thus only consider the merits of Plaintiffs' individual capacity § 1983 claims.

Plaintiff claims that Defendants, acting under color of state law, violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.  Plaintiff also appears to assert a claim under the ADA.  The bulk of Plaintiff's claims are under the Eighth Amendment, so the undersigned will begin with those claims and then address the remaining claims in turn.

## I.    Plaintiff's Eighth Amendment Claims

The Eighth Amendment requires prison officials to "'take reasonable measures to

---

[2] The undersigned notes that Plaintiff seeks injunctive relief, although it is not clear what relief he seeks.  But Plaintiff is not seeking prospective equitable relief to end a continuing violation of federal law because he alleges that he is no longer an inmate at the Georgia Diagnostic and Classification Prison.  The doctrine of *Ex parte Young*, 209 U.S. 123 (1908) cannot save Plaintiff's official capacity claims from the Eleventh Amendment bar.

guarantee the safety of the inmates.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The Eighth Amendment can give rise to claims based on a prison official's failure "to protect prisoners from violence at the hands of other prisoners." *Id.* (quoting *Farmer*, 511 U.S. at 833). The Eighth Amendment can also "give rise to claims challenging specific conditions of confinement, the excessive use of force, and the deliberate indifference to a prisoner's serious medical needs." *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010) (internal quotation marks omitted). An Eighth Amendment claim "requires a two-prong showing: an objective showing of a deprivation or injury that is sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities and a subjective showing that the official" acted with deliberate indifference. *Id.* at 1304 (internal quotation marks omitted). In other words, Plaintiff must allege "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Caldwell*, 748 F.3d at 1099 (internal quotation marks omitted). To show deliberate indifference, Plaintiff must assert that the Defendant "actually (subjectively) knew" that Plaintiff "faced a substantial risk of serious harm" and that the Defendant "disregarded that known risk by failing to respond to it in an (objectively) reasonable manner." *Id.* (internal quotation marks omitted).

A.   Eighth Amendment Claims Against Defendants Jackson and John Doe #2

Plaintiff asserts that Defendant Jackson did not adequately address Slim's threats against Plaintiff. Even if Plaintiff sufficiently alleged that Jackson knew of a substantial risk of serious harm due to Slim's placement in Plaintiff's dorm, Plaintiff did not allege

that Jackson was deliberately indifferent to that risk.  Rather, Plaintiff alleges that after Plaintiff alerted Jackson to Slim's threats, Jackson moved Slim to another dorm, where he was separated from Plaintiff by at least two security doors.  There is no allegation that this response was objectively unreasonable.

Plaintiff also asserts that John Doe #2 did not adequately address Slim's threats against Plaintiff because John Doe #2 let Slim out of F-house when he should not have.  But there is no allegation that John Doe #2 subjectively appreciated a substantial risk of serious harm to Plaintiff if he let Slim out of F-house.  Therefore, the Complaint does not sufficiently allege that John Doe #2 was deliberately indifferent to a substantial risk of serious harm.

For these reasons, it is **RECOMMENDED** that Plaintiff's claims against Defendants Jackson and John Doe #2 be **DISMISSED**.

B.    Eighth Amendment Claim Against Defendant Cochran

Plaintiff contends that Defendant Cochran watched Slim attack Plaintiff but did not prevent or stop the attack.  Plaintiff also alleges that he sustained serious injuries because of the attack.  The undersigned finds that it would be premature to dismiss Plaintiff's Eighth Amendment claim against Cochran, so this claim may go forward.

C.    Eighth Amendment Claim Against Defendant Carter

Plaintiff claims that he was seriously injured as a result of Slim's attack.  Plaintiff further alleges that although his injuries were obvious and visible, Defendant Carter refused to treat his injuries.  The undersigned finds that it would be premature to dismiss Plaintiff's Eighth Amendment claim against Carter, so this claim may go forward.

8

D.     Eight Amendment Claim Against Defendant Pitman

Plaintiff claims that Defendant Pitman twice attempted to close a gate on Plaintiff's wheelchair.  Plaintiff did not allege that he was injured as a result of the first incident, so that incident does not give rise to an Eighth Amendment claim.  Plaintiff alleges that the second incident occurred because he did not follow Pitman's order to go to the end of a line.  But there is no allegation that Pitman acted maliciously and sadistically for the very purpose of causing harm and not in a good-faith effort to maintain discipline.  And though Plaintiff summarily alleges that he was injured due to the second incident, he did not provide any facts about *how* he was injured—in stark contrast to his specific allegations regarding the injuries caused by Slim's attack and by his fall.  "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim."  *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).  There is nothing in Plaintiff's complaint to suggest that the second gate incident was more than a *de minimis* use of physical force, and the "Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Id.* at 37-38.  For these reasons, it is **RECOMMENDED** that Plaintiff's claims against Defendant Pitman be **DISMISSED**.

E.     Eighth Amendment Claim Against Defendants Butts and Chatman

Plaintiff asserts that Defendant Butts did not adequately train or supervise the Prison's medical personnel.  Plaintiff does not make any specific factual allegations against Defendant Chatman, and the undersigned assumes for purposes of this

preliminary review that Plaintiff named him because he is the supervisor of all the other Defendants.  Supervisory officials like Butts and Chatman "are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Harrsion v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks omitted).  To state a claim against a supervisory official, Plaintiff must allege that the supervisor "either participated directly in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Id.*

Plaintiff does not allege that Butts or Chatman participated directly in the conduct he challenges.  Plaintiff also did not allege a causal connection between either supervisor's actions and the alleged constitutional violations.  A causal connection "can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  Or a causal connection can be established if a supervisor's policy or custom "results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (internal quotation marks omitted).  But Plaintiff did not allege that there was a history of widespread abuse that Butts and Chatman knew about but failed to correct; he did not allege that either supervisor had a policy or custom that resulted in deliberate indifference to constitutional rights; and he did not allege that either supervisor directed his subordinates to act unlawfully or knew that the subordinates would act

10

unlawfully and failed to stop them.  Plaintiff's Complaint thus fails to state a § 1983 claim against Butts and Chatman.  For all of these reasons, it is **RECOMMENDED** that Plaintiff's § 1983 claims against Defendants Butts and Chatman be **DISMISSED**.

## II.    Plaintiff's ADA and Resulting Eighth Amendment Claims

Plaintiff asserts that he was injured because his cell was not "ADA wheelchair access[i]ble."  Recast Compl. at 11 ¶ 21.  Plaintiff contends that because his cell did not have a rail near the toilet, he fell and was seriously injured on one occasion when he tried to use the toilet.  He further contends that the medical treatment he received following this incident was inadequate.  The undersigned construes these allegations as attempting to assert a claim under Title II of the ADA and another Eighth Amendment claim.  However, these claims are not properly joined in this action.  Under the Federal Rules, a party may not join claims in a single action unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20.  "[A] claim arises out of the same transaction or occurrence if there is a logical relationship between the claims."  *Constr. Aggregates, Ltd. v. Forest Commodities Corp.*, 147 F.3d 1334, 1337 n.6 (11th Cir. 1998).

The Court finds that the relevant events occurred at different locations, and the claims involve different parties and raise independent questions of law and fact.  Furthermore, the alleged ADA and Eighth Amendment violations occurred after the filing of Plaintiff's original complaint.  Pursuant to Federal Rules of Civil Procedure Rule 20, the Court will not allow the joinder of these claims.  If Plaintiff wishes to pursue these

claims he may do so by filing a separate civil rights complaint after fully exhausting his administrative remedies at GDCP.  Thus, it is **RECOMMENDED** that Plaintiff's claims resulting from his alleged fall while using the toilet be **DISMISSED**.

## III.    Plaintiff's First Amendment Claims

Plaintiff summarily alleges that Defendant Caldwell conspired with Defendant Fowlkes to retaliate against him.  Plaintiff also alleges that Caldwell retaliated against Plaintiff for using the Prison's grievance procedure.  The undersigned construes these allegations as an attempt to assert First Amendment retaliation claims.

"First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008).  To state a First Amendment retaliation claim, Plaintiff must establish that he engaged in protected speech, that a Defendant's "retaliatory conduct adversely affected the protected speech," and "that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Id.*  Plaintiff's "complaint must contain enough facts to state a claim of retaliation by prison officials that is 'plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Plaintiff did not sufficiently allege any of these elements.  First, Plaintiff did not allege that he engaged in protected speech because he did not clearly allege that he filed a grievance.  Second, Plaintiff did not allege that Caldwell or Fowlkes engaged in retaliatory conduct that adversely affected Plaintiff's protected speech.  And third, even if Plaintiff had sufficiently alleged the first two elements, he did not allege a causal

connection because there is no allegation that either Caldwell or Fowlkes knew about a grievance that Plaintiff filed or took any adverse action against Plaintiff as a result of a grievance.  Thus, it is **RECOMMENDED** that Plaintiff's First Amendment claims be **DISMISSED**.

## II.   Plaintiff's Fifth Amendment Claims

Plaintiff invokes the Fifth Amendment for nearly every claim in his Recast Complaint.  Plaintiff did not specify which of the Fifth Amendment's five rights he seeks to vindicate, but the undersigned presumes that Plaintiff intended to assert a due process claim.  Given that Plaintiff does not assert claims against any federal actor, the proper vehicle for any due process claims is the Fourteenth Amendment, not the Fifth Amendment.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'")  It is thus **RECOMMENDED** that any due process claim brought under Fifth Amendment be **DISMISSED** with prejudice.

## IV.   Plaintiff's Fourteenth Amendment Claims

Plaintiff invokes the Fourteenth Amendment for nearly every claim in his Recast Complaint.  It is not clear whether Plaintiff is simply reminding the Court that his Eighth Amendment claims apply to the Prison by virtue of the Fourteenth Amendment or is attempting to assert a separate claim under the Fourteenth Amendment.  The undersigned found only one potential standalone Fourteenth Amendment claim in the Recast Complaint: Plaintiff's claim against John Doe #1.  Plaintiff contends that John Doe #1

13

ignored Plaintiff's requests to pass out incident reports in his dorm after Slim's attack. There is no allegation, however, that John Doe #1 (or any other Prison official) refused to let Plaintiff to file a grievance regarding Slim's attack or otherwise deprived Plaintiff of any procedural rights to which he was entitled. *See Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006) (finding no due process claim where there was no allegation that a defendant deprived the plaintiff of his procedural rights). It is thus **RECOMMENDED** that Plaintiff's Fourteenth Amendment claims be **DISMISSED**.

## SUMMARY

In summary, it is recommended that Plaintiff's official capacity § 1983 claims against all Defendants claims be dismissed. It is also recommended that all of Plaintiff's ADA, First Amendment, Fifth Amendment, and Fourteenth Amendment claims be dismissed and that all of Plaintiff's claims against the following Defendants be dismissed: Butts, Caldwell, Chatman, Jackson, John Doe #1, John Doe #2, Medical College of Georgia, Morton, and Pitman. The only claims remaining after this preliminary screening are Plaintiff's Eighth Amendment claims against Carter, Cochran, and Fowlkes.

## OBJECTIONS

Plaintiff may serve and file written objections to the undersigned's recommendations with the district judge to whom this case is assigned within fourteen (14) days after being served a copy of this Order. *See* 28 U.S.C. § 636(b)(1).

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable Eighth Amendment constitutional

14

violation claims against Nurse Carter, Correctional Officer Russell Cochran, and Medical Director Joseph Fowlkes, it is accordingly **ORDERED** that service be made on these Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.  Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.  Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.  This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,
## PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and

15

correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.  If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

### DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be <u>completed</u> within 90 days of the date of filing of

16

an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.  The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:  except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.  No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery

17

period begins unless otherwise directed by the court.

## DIRECTIONS TO CUSTODIAN OF PLAINTIFF

As previously ordered, the Warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county where he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act, Plaintiff's custodian is authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.

Collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against her prior to the collection of the full filing fee.

## PLAINTIFF'S OBLIGATION TO PAY FILING FEE

Pursuant to provisions of the Prison Litigation Reform Act, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; Plaintiff shall continue to remit monthly payments as required by the Prison Litigation Reform Act. Collection from Plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event Plaintiff is released from custody and fails to remit payments.  Plaintiff's Complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

18

SO ORDERED and RECOMMENDED, this 22nd day of October, 2014.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE