#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE MIDDLE DISTRICT OF GEORGIA
#### MACON DIVISION

| | |
|---|---|
| JACKIE DEWAYNE OWENS, | : |
| Plaintiff, | : |
| vs. | : CASE NO. 5:13-CV-299-MTT-MSH |
| | : 42 U.S.C. § 1983 |
| NURSE CARTER, *et al.*, | : |
| Defendants. | : |

### ORDER & RECOMMENDATION

Presently pending before the Court is Defendants' Cochran and Fowlkes pre-answer motion to dismiss. (ECF No. 61). Also pending before the Court are Plaintiff's motions for an extension of time (ECF No. 88) and for entry of default against Defendant Carter (ECF Nos. 74-5 & 82). For the reasons explained below, Plaintiff's motion for an extension of time is denied but his motion for entry of default is granted. It is also recommended that Defendants' motion to dismiss be granted.

### BACKGROUND

Plaintiff, who is wheelchair bound, was an inmate at the Georgia Diagnostic and Classification Prison. On July 14, 2013, Plaintiff saw prison gang members and their leader "Slim" attack a fellow inmate. Slim came to believe that Plaintiff "kited [Slim] out for his gang beating of the inmate." Recast Compl. 6 ¶ 15, ECF No. 39. Slim told Plaintiff that if he found out that Plaintiff had snitched on him for the gang beating, Slim was going to "beat [Plaintiff's] ass out of his wheelchair, then sto[m]p him into the

concrete floor." *Id.* Plaintiff then informed Defendant Jackson, the unit manager, of the threats and Jackson moved Slim to another dorm. However, Slim's new dorm was "right next door in F-house[,] leaving a way for Slim to access the [Plaintiff]." *Id.* at 7 ¶ 15.

On July 16, 2013, a correctional officer let Slim out of F-house. Defendant Cochran, also a correctional officer, then permitted Slim to enter Plaintiff's dorm. Defendant Cochran watched as Slim knocked Plaintiff out of his wheelchair and attacked him, but did nothing to stop the assault despite Plaintiff's cries for help. After punching, kicking, and stomping Plaintiff repetitively, Slim ran past Defendant Cochran and back into F-house. Reid Aff. Attach. D at 2, ECF No. 62-1. Plaintiff was then taken to the medical treatment room due to his complaints of severe pain in his foot, ankle, back, neck, and head. Recast Compl. 9 ¶ 19. However, Defendant Nurse Carter refused to treat Plaintiff and sent him back to his cell, insisting that he had to "fill out a sick call" before he would be examined. *Id.* Plaintiff wrote a statement about Slim's attack and told John Doe #1, the captain on duty, that he wanted to press charges. Plaintiff also asked the officers to pass out incident reports in his dorm, but that request "was ignored." *Id.* at 8 ¶ 18. The next day, a correctional officer took Plaintiff back to the medical treatment room because he continued to complain of pain in his foot, ankle, and neck, but Carter again refused to treat him until he filled out a sick call form. On July 22, 2013, after filling out several sick call forms, Plaintiff finally received medical treatment. Reid Aff. Attach. D at 9. The physician's assistant ordered x-rays on Plaintiff's ankle and foot—revealing damage to the ankle mandating the use of a permanent boot—and administered a shot to help relieve his head, neck, and back pain. Recast Compl. 11 ¶ 21.

On July 25, 2013, Plaintiff filed a grievance (Grievance No. 154071) alleging staff negligence resulting from the July 16 assault. Reid Aff. ¶ 22 & Attach. D at 1-4. The warden denied Plaintiff's grievance stating that "it appeared from his investigation that all involved prison personnel acted appropriately." Reid Aff. ¶ 22 & Attach. D at 13. Although the warden's response is dated August 29, 2013, Plaintiff did not sign the response until September 5, 2013. *Id.* That same day, Plaintiff completed and submitted his grievance appeal form. Reid Aff. ¶ 22 & Attach. D at 14-17. On October 7, 2013, the Central Office denied Plaintiff's appeal due to Plaintiff's "failure to follow appropriate grievance procedure."[1] Reid Aff. ¶ 22 & Attach. D at 18.

On August 13, 2013, Plaintiff filed a related grievance (Grievance No. 155339), alleging that medical was denying him proper medical treatment for the continuing pain in his ankle caused by the July 16 assault.[2] Reid Aff. ¶ 23 & Attach. E at 1. On August 28, 2013, the warden also denied this grievance, stating that after investigation, it appeared that Plaintiff was receiving adequate medical care. Reid Aff. ¶ 23 & Attach. E at 5. On September 4, 2013—one day after Plaintiff received the warden's decision—Plaintiff completed and submitted his grievance appeal form. Reid Aff. ¶ 23 & Attach. E at 6-8. This appeal was denied by the Office of Health Services clinical staff on October 8, 2013. Reid Aff. ¶ 23 & Attach. E at 9.

---

[1] The grievance process requires that inmates' complaints and "requested relief must be stated legibly and in writing in the space provided on the Grievance Form and on one additional page." Reid Aff. Attach. A at 7, ¶ D.1. However, Plaintiff's grievance form included three additional pages. Reid Aff. Attach. D at 14-17.
[2] Specifically, Plaintiff requested that he be referred to an outside specialist given the severe and continuous nature of the pain and his preexisting medical condition. Reid Aff. ¶ 23 & Attach. E.

3

On August 20, 2013, prior to receiving the warden's response to either grievance, Plaintiff filed this Complaint.[3]  *See* Compl., ECF No. 1.  At the direction of the Court, Plaintiff filed his Recast Complaint (ECF No. 39) and after a preliminary review, only Plaintiff's Eighth Amendment claims against Defendants Cochran, Carter, and Fowlkes for failure to protect and failure to provide adequate medical care were allowed to proceed.  Order 8-14, Oct. 22, 2014, ECF No. 40.

On June 25, 2015, Defendants' Cochran and Fowlkes moved to dismiss the Recast Complaint, in part, for failure to exhaust prior to filing this action.  *See* Mot. to Dismiss, ECF No. 61; Br. in Supp. of Mot. to Dismiss 5-7, ECF No. 62.  Plaintiff filed two responses in opposition to Defendants' motion (ECF Nos. 77 & 82) and other miscellaneous filings purporting to contain exhibits (ECF Nos. 74 & 85).  In response to Plaintiff's second "Response" (hereinafter "Pl.'s Sur-Reply," ECF No. 82), Defendants filed a notice of objection.  Notice of Obj. 1-3, ECF No. 86.  Plaintiff now requests an extension of time to "file an opposition to Defendants' Objection to Sur-Reply Brief." (ECF No. 88).  Plaintiff also moves for entry of default against Defendant Carter.  *See* Decl. for Entry of Default 1-3, ECF No. 74-5;  Pl.'s Sur-Reply 9-10, ECF No. 82.  These motions are ripe for review.

## DISCUSSION

**I.       Defendants' Cochran and Fowlkes Motion to Dismiss**

Title 42, United States Code section 1997e(a) provides that "[n]o action shall be

---

[3] The Court notes that the Complaint was filed on August 20, 2013, but was signed on August 14, 2013.  For purposes of the exhaustion analysis in this case, the difference in the date of filing under the mailbox rule is irrelevant.

4

brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (internal quotation marks and citation omitted). The argument that a plaintiff has failed to satisfy section 1997e(a) is properly raised in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) ("[E]xhaustion should be decided on a Rule 12(b) motion to dismiss[.]"). Furthermore, since dismissal for failure to exhaust is not an adjudication on the merits, the Court can resolve factual disputes using evidence from outside the pleadings. *Id.* at 1376.

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Id.* If, taking plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed. *Id.* "If the complaint is not subject to dismissal at the first step . . . , the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* The defendant bears the burden of proof during this second step. *Id.*

Defendants Fowlkes and Cochran state that on July 25, 2013, Plaintiff timely filed

5

a grievance (#154071) concerning the events that occurred on July 16, 2013.[4]  Br. in Supp. of Mot. to Dismiss 7, ECF No. 62.  It is undisputed that Plaintiff filed his complaint on August 20, 2013, before receiving the warden's response or submitting a grievance appeal.  *Id.*  Defendants argue that, based on this timeline, it is clear that Plaintiff failed to exhaust prior to filing.  *Id.* at 5-7; *see*, *e.g.*, *Williams v. Barrow*, 559 F. App'x 979, 987 (11th Cir. 2014) (explaining that the plaintiff did not properly exhaust administrative remedies even though he submitted his grievance appeal form before filing suit because "the appeal was not denied until November 16, 2011, which was after Williams had filed his complaint in the district court"); *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) (holding "the term 'brought'—as used in section 1997e(a)—to mean the filing or commencement of a lawsuit.") (internal quotations and citations omitted).

At the first step of the exhaustion analysis, the Court looks to the Defendants' contentions and Plaintiff's response to see if they factually conflict.  While Plaintiff concedes that the action was filed before the grievances process was completed, Plaintiff argues that the administrative remedies were not truly "available" within the meaning of § 1997e(a).  Resp. to Mot. to Dismiss 6-7, 19-25, 38-39, ECF No. 77; *see also* Pl.'s Sur-Reply 6-8, ECF No. 82.  Specifically, Plaintiff avers that he initially did not have access to the grievance forms; once he finally obtained a form, the counselor refused to take the completed form; when the counselor eventually took the form, she refused to provide him

---

[4] Defendants do not specifically reference the other grievance (#155339) that also appears to relate to incidents stemming from the July 16 assault.  However, as that grievance was also not denied until October 8, 2013—almost a month and a half after Plaintiff filed this action—the exhaustion analysis is the same.

with a receipt; and the Central Office refused to review the grievance because it contained too many additional pages, despite the fact that the grievance and grievance appeal—with the three additional pages—were accepted by both the warden and the grievance counselor. Resp. to Mot. to Dismiss 6-8, 25. Plaintiff also avers that the grievance procedure is consistently not followed and, as a result, Defendants have "more than restrained [his] ability to use the grievance procedure." *Id.* at 18, 38; *see also* Pl.'s Sur-Reply 8.

Even taking Plaintiff's allegations detailing his difficulty with the grievance procedure as true, Plaintiff failed to exhaust. Plaintiff asserts that because Defendants did not follow their own grievance procedure and attempted to thwart his ability to file grievances, the administrative process was "unavailable." Resp. to Mot. to Dismiss 25; Pl.'s Sur-Reply 7-8. In support of such an argument, Plaintiff references decisions from other courts of appeals that have concluded that administrative remedies are unavailable when prison officials either do not respond to an inmate's grievances or prevent the filing of such grievances. Pl.'s Sur-Reply 7 (citing, *e.g.*, *Kaba v. Stepp*, 458 F.3d 678, 684-85 (7th Cir. 2006)). Although the Eleventh Circuit has held that "a prison official's conduct, under certain circumstances, might prevent an inmate from pursuing his administrative remedies, thereby rendering them 'unavailable' and lifting the exhaustion requirement," the Eleventh Circuit has not held that the prison official's failure to respond therefore renders the remedy unavailable. *Tilus v. Kelly*, 510 F. App'x 864, 866 (11th Cir. 2013) ("Without deciding the issue, we have also recognized that other courts of appeals have concluded that administrative remedies are unavailable where prison officials do not

7

respond to an inmate's grievances or prevent the filing of grievances") (citing *Bryant v. Rich*, 530 F.3d 1368, 1373 n.6 (11th Cir. 2008)). But regardless of whether administrative remedies are "unavailable" when a prison official refuses to respond to a grievance or prevents the filing of a grievance, Plaintiff actually did file grievances relating to the assault and did receive responses from prison officials. *See* Reid Aff. ¶ 22 & Attach. D at 13 & 18; Reid Aff. ¶ 23 & Attach. E at 5 & 9. An administrative remedy is "available" for purposes of § 1997e(a) when that remedy is "capable of use for the accomplishment of [its] purpose." *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) (citation omitted). By filing the grievances, Plaintiff established that the remedy was "capable of use for the accomplishment of [its] purpose." Thus, Plaintiff's argument that the grievance process was "unavailable" is meritless.

Plaintiff alternatively argues that pursuant to *Nussle v. Willette*, 224 F.3d 95, 106 (2d Cir. 2000), the PLRA exhaustion requirement applies only to § 1983 actions challenging "prison conditions," but does not apply to § 1983 actions alleging assault and excessive force claims. Pl.'s Sur-Reply 6. However, *Nussle* is no longer good law. In *Porter v. Nussle*, the Supreme Court reversed the decision of the Second Circuit and held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). This argument is thus also without merit. Because Defendants have shown that Plaintiff failed to complete the grievance process prior to filing this action, it is recommended that the claims against Defendants' Cochran and Fowlkes be dismissed at the first step of the

exhaustion analysis.

## II.     Plaintiff's Motion for an Extension of Time

On November 6, 2015, Defendants filed a notice of objection (ECF No. 86) to Plaintiff's Sur-Reply (ECF No. 82), contending that the filing is actually a sur-reply, filed without leave of court. Notice of Obj. 1-3. Defendants request that as a result, this Court decline to consider any arguments put forth in the sur-reply, or in the alternative, grant Defendants leave to file a sur-reply. *Id.* at 3 n.2. In response, Plaintiff filed a motion for an extension of time to "file an opposition to Defendants' Objection to Sur-Reply Brief." (ECF No. 88).

Since Plaintiff is proceeding *pro se*, the Court has considered the arguments presented in Plaintiff's sur-reply. However, as discussed above, the Court finds Plaintiff's "Reply Response" arguments to be meritless. Additional filings from either Defendants or Plaintiff are unnecessary. Plaintiff's motion for an extension of time to file a response is thus denied.

## III.    Plaintiff's Motions for Entry of Default

On October 22, 2014, after preliminary review, Plaintiff's claims against Defendants Cochran, Fowlkes, and Carter were permitted to proceed and service was ordered. R. & R. 8, 14-15, Oct. 22, 2014, ECF No. 40. Although the waiver of service was never returned as unexecuted, Defendant Carter never responded or otherwise appeared and so personal service was ordered on April 28, 2015. Text-Only Order, April 28, 2015. After several unsuccessful attempts to personally serve Defendant Carter, a United States Marshals Service Process Receipt and Return was personally served on

Defendant Carter on June 23, 2015.  Process Receipt & Return 1, ECF No. 64.

To date, Defendant Carter has failed to answer or otherwise respond to the Complaint.[5]  On August 25, 2015—63 days after personal service was effected—Plaintiff moved for an entry of default against Defendant Carter.  Decl. for Entry of Default 1-3, ECF No. 74-5.  Rule 55 of the Federal Rules of Civil Procedure provides that a clerk "*must* enter [a] party's default" when that party "failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." (emphasis added).  Therefore, the Clerk is hereby ORDERED to enter default against Defendant Carter.

On October 11, 2015, Plaintiff again pointed out Defendant Carter's lack of entry in the case and requested that the Court "rule on Plaintiff's summary judgment."  Pl.'s Sur-Reply 9-10, ECF No. 82.  Because Plaintiff never moved for "summary judgment," this Court is construing this request as a motion for entry of default judgment against Defendant Carter. As Plaintiff's claim is not for a sum certain, the Court will conduct a hearing to determine the amount of damages Plaintiff sustained before default judgment may be entered.  Fed. R. Civ. P. 55(b)(2)(B).  Defendant Carter is therefore ORDERED to appear before the Court at 10:00 a.m. on Tuesday, January 26, 2016, in Courtroom 2 of the United States District Court for the Columbus Division of the Middle District of Georgia for a hearing as to entry of default judgment.

## **CONCLUSION**

For the reasons explained above, it is recommended that Defendants' motion to

---

[5] However, on December 18, 2015, a Notice of Attorney Appearance was entered on Defendant Carter's behalf.  (ECF No. 89).

10

dismiss the claims against Defendants Cochran and Fowlkes (ECF No. 61) be granted. Additionally, Plaintiff's motion for an extension of time (ECF No. 88) is denied, but Plaintiff's motion for entry of default is granted (ECF No. 74-5). Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 22nd day of December, 2015.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE